IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SMS FINANCIAL RECOVERY SERVICES, LLC | ) ) ) |
| Plaintiff, | ) ) |
| vs | ) Case No. 1:23-cv-15666 ) |
| GARY LEVITAS and NORTHFIELD PROPERTIES, INC, | ) ) ) |
| Defendant. | ) |

## COMPLAINT

SMS FINANCIAL RECOVERY SERVICES, LLC, ("SMS Financial") hereby complains against the Defendants, GARY LEVITAS ("LEVITAS") and NORTHFIELD PROPERTIES, INC, ("NORTHFIELD")(collectively "The Defendants") as follows:

### Nature of the Action

1. The Plaintiff, SMS Financial as assignee of Fifth Third Bank, successor by merger to MB Financial Bank, brings this action for breach of a Resource Note executed by the Defendants GARY LEVITAS and NORTHFIELD PROPERTIES, INC. For relief, SMS Financial seeks damages in the principal amount of $249,999.99, plus attorneys' fees and costs.

### Jurisdiction and Venue

2. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity between the parties who are citizens of different states as follow:

   a. The Plaintiff SMS Financial Recovery Services, LLC and its respective members are citizens of Arizona. See Exhibit A, hereto;

   b. The Defendant LEVITAS is a citizen of the State of Illinois, domiciled in Northbrook, Illinois; and

    c.    The Defendant NORTHFIELD is an Illinois corporation with its principal place of business located in Northbrook Illinois.

## Venue

3.    Pursuant 28 U.S.C. § 1391, venue is proper in this Court because the Defendants reside in the Northern District of Illinois and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## The Note

4.    On or about June 30, 2011, LEVITAS and NORTHFIELD executed a Recourse Note with MB Financial Bank, whereby they each jointly and severally agreed to pay MB Financial the principal amount of $250,000 together with interest. ("Note") A true and correct copy of the Note is attached as Exhibit B.

5.    The Note provided that the principal amount of the Note, together with all accrued interest and all other amounts owing thereunder would become due and payable in full no later than three years after the date of the Note or by June 30, 2014 ("The Maturity Date")

6.    Interest payments under the Note were due and payable in quarterly installments commencing on the fifth day of each month immediately succeeding the date of the Note and continuing on the fifth day of each September, December, March and June thereafter until the Maturity Date.

7.    An event of default under the Note would occur if The Defendants failed to pay all amounts due thereunder on the Maturity Date.

8.    The Defendants made some quarterly installment payments of interest on the Note prior to the Maturity Date but failed to pay the full amount of the principal amount owed on the Maturity Date.

9.    As of the Maturity Date, the principal amount outstanding on the Note was $249,999.99.

10. The Defendants defaulted on the Note on June 30, 2014 by failing to make pay the principal amount owed or any other amounts due under the Note when the Note reached its Maturity Date.

11. By failing to pay the full principal amount due on the Maturity Date, The Defendants materially breached the Note.

12. The Note also provided for The Defendants to pay the cost of enforcement of the Note, including attorney fees and court costs incurred in the collection of all amounts due under the Note upon default. [Exhibit A, Par. 12]

## The Assignment of Loan documents

13. On August 29, 2023, Fifth Third Bank, as successor by merger to MB Financial Bank, assigned to SMS Financial all of its rights, title and interest in the Note executed by The Defendants, together with all related loan documents. ("Assignment") A true and correct copy of the redacted Assignment is attached as Exhibit C.

14. Pursuant to the Assignment, SMS Financial became the *bona fide* owner of the Note and assumed all rights to enforce the Note and other Loan Documents against The Defendants.

15. The Defendants' failure to pay the principal amount due under the Note has caused SMS Financial to suffer damages in the principal amount of $249,999.99.

16. The Plaintiff has fully performed all of its obligations required under the Note.

Wherefore, the Plaintiff SMS FINANCIAL RECOVERY SERVICES, LLC requests that this Court enter judgment in its favor and against the Defendants GARY LEVITAS and NORTHFIELD PROPERTIES, INC, both jointly and severally and to award it the following relief:

    a. Award the Plaintiff the principal amount of $249,999.99;

    b. Award the Plaintiff its court costs and reasonable attorneys' fees; and

      c.      Award the Plaintiff such additional relief that the Court deems just and proper.

                                  SMS FINANCIAL RECOVERY SERVICES, LLC

                                    By: /s/ *Marshall J. Burt*
                                    Its attorney

Marshall J. Burt
The Burt Law Group, Ltd.
1338 S. Federal St.
Chicago, IL 60605
312.854.3833
marshall@mjburtlaw.com
IARDC #6198381

4

## STATEMENT OF CITIZENSHIP OF
## SMS FINANCIAL RECOVERY SERVICES, LLC

SMS Financial Recovery Services, LLC is an Arizona limited liability company organized under the laws of Arizona with its principal place of business located in Phoenix, AZ. The two members of SMS Financial Recovery Services, LLC are SMS Management, LLC and SMS Financial, LLC. Each of the members have citizenship as follows:

1) SMS Management, LLC is a limited liability company organized under the laws of Arizona and has its principal place of business in Phoenix AZ. The three members of SMS Management, LLC are 1) Two Med Investments, LLC; 2) J&R Capital, LLC and 3) DJS Capital, LLC. Each of the members have citizenships as follows:

   a. Two Med Investments, LLC is a limited liability company organized under the laws of Arizona with its principal place of business located in Phoenix, AZ. The two members of Two Med Investments, LLC are Benjamin Myers and Colette Myers

      i. Benjamin Myers is an individual who is a resident and citizen of Arizona.

      ii. Colette Myers is an individual who is a resident and citizen of Arizona.

   c. J&R Capital, LLC is a limited liability company organized under the laws of Arizona with its principal place of business located in Phoenix, AZ. The members of J&R Capital, LLC are Jonathan Hoffer and Rachel Hoffer.

      i. Jonathan Hoffer is an individual who is a resident and citizen of Arizona.

      ii. Rachel Hoffer is an individual who is a resident and citizen of Arizona.

   d. DJS Capital, LLC is a limited liability company organized under the laws of Arizona with its principal place of business located in Phoenix, AZ. The sole member of DJS Capital, LLC is Daniel Shorr. Daniel Shorr is an individual who is a resident and citizen of Arizona.

EXHIBIT A

2)     SMS Financial, LLC is a limited liability company organized under the laws of Arizona with its principal place of business in Phoenix, AZ. The three members of SMS Financial, LLC are 1) Two Med Investments, LLC; 2) J&R Capital, LLC and 3) DJS Capital, LLC. Each of the members have citizenships as follows:

    a.     Two Med Investments, LLC, is a limited liability company organized under the laws of Arizona and its principal place of business is located in Phoenix, AZ. The two members of Two Med Investments, LLC are Benjamin Myers and Colette Myers

        i.     Benjamin Myers is an individual who is a resident and citizen of Arizona.

        ii.     Colette Myers is an individual who is a resident and citizen of Arizona.

    b.     J&R Capital, LLC is a limited liability company organized under the laws of Arizona and its principal place of business is located in Phoenix, AZ. The members of J&R Capital, LLC are Jonathan Hoffer and Rachel Hoffer.

        i.     Jonathan Hoffer is an individual who is a resident and citizen of Arizona.

        ii.     Rachel Hoffer is an individual who is a resident and citizen of Arizona.

    c.     DJS Capital, LLC is a limited liability company organized under the laws of Arizona and its principal place of business is located in Phoenix, AZ. The sole member of DJS Capital, LLC is Daniel Shorr. Daniel Shorr is an individual who is a resident and citizen of Arizona.

## RECOURSE NOTE

$250,000.00                                                                                  June 30, 2011

1.     <u>Agreement to Pay</u>. FOR VALUE RECEIVED, the undersigned, Gary Levitas, an individual, and NORTHFIELD PROPERTIES, INC., an Illinois corporation (such individual and such corporation being collectively referred to herein as "<u>Maker</u>" and individually referred to herein as a "<u>Constituent Obligor</u>"), jointly and severally promise to pay to the order of MB FINANCIAL BANK, N.A. (herein, together with each successive owner and holder of this Note, called "<u>Payee</u>") in the manner provided for herein, the principal sum of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), together with interest in arrears on the balance of principal remaining from time to time unpaid at the rates provided for herein.

2.     <u>Interest</u>. Except as otherwise provided in Section 5 below, interest shall accrue on the outstanding principal balance hereof at an annual interest rate equal to five percent (5%) per annum (the "<u>Regular Rate</u>"). Interest shall be due and payable in quarterly installments commencing on the fifth (5th) day of the month immediately succeeding the date hereof and continuing on the fifth (5th) day of each September, December, March and June thereafter until the Maturity Date (as such term is hereinafter defined). Interest shall be calculated on the basis of the number of days elapsed during the period for which interest is being charged, predicated on a year consisting of three hundred sixty (360) days.

3.     <u>Payments of Principal</u>. The principal amount of this Note, together with all accrued and unpaid interest thereon and all other sums owing hereunder, shall be due and payable in full on the date that is three (3) years after the date hereof (the "<u>Maturity Date</u>") or such earlier date as such amount amounts shall be due pursuant to Section 8 below. Except as otherwise provided in Section 8 below, Maker shall pay interest, only, prior to the Maturity Date.

4.     <u>Prepayment</u>. Maker may prepay on any interest payment date the unpaid principal balance of this Note, in whole or in part, provided that (a) Maker gives Payee not less than two (2) business days prior written notice of its intention to do so; and (b) Maker pays, at the time of such prepayment and in addition thereto, all accrued interest to the date of such prepayment and all other unpaid obligations then due hereunder. Principal amounts repaid may not be reborrowed.

5.     <u>Default Rate</u>. From and after the occurrence and during the continuance of a Default (as such term is hereinafter defined), the entire principal balance hereof shall thereafter bear interest at a rate equal to five percent (5%) per annum in excess of the Regular Rate (the "<u>Default Rate</u>").

6.     <u>Late Charge</u>. Without limiting the provisions of Section 5 hereof, in the event any installment of interest is not paid within five (5) days after the due date thereof, Maker shall pay a late charge of five percent (5%) of the amount due to defray the expense incident to handling any such delayed payment or payments. Payee's acceptance of a late charge shall not constitute a waiver of any of Payee's rights or remedies or of any default hereunder which may then or thereafter exist.

7.     <u>Defaults</u>. Each of the following shall constitute an event of default under this Note (a "<u>Default</u>"): (a) failure by Maker to pay all amounts due hereunder on the Maturity Date; (b) failure by Maker to pay interest owing hereunder when due; (c) failure by Maker to pay any

amount owing hereunder other than principal and interest within five (5) days after demand therefor by Payee; (d) failure by any Constituent Obligor to pay, when due, any amount payable under any other obligation of such Constituent Obligor to Payee, however created, arising or evidenced, whether direct to indirect, absolute or contingent, now or hereafter existing, or due or to become due, subject to applicable cure periods, if any; (e) a felony indictment is filed against any Constituent Obligor or any of their respective affiliates in any jurisdiction, under federal or state law unless such indictment is dismissed within ten (10) days after filing; (f) an indictment or other charge is filed against any Constituent Obligor or any of their respective affiliates in any jurisdiction, under any federal or state law, for which forfeiture of any funds, property or other assets is a potential penalty unless such charge is dismissed within ten (10) days after filing; (g) any Constituent Obligor shall (i) be adjudicated a bankrupt or insolvent, (ii) file a voluntary petition in bankruptcy, or admit (by answer, by default or otherwise) the material allegations of a petition filed against him or it in bankruptcy, or take or omit to take any action for the purpose of, or with the result of, effecting or permitting any of the foregoing, (iii) fail to dismiss any petition filed against him or it in bankruptcy within sixty (60) days after the filing of such petition, (iv) allow a substantial part of his or its property to be attached, seized, levied upon, or taken possession of by any receiver, custodian or assignee for the benefit of creditors, or (v) be enjoined, restrained, or in any way prevented by court order from conducting all or a substantial portion of his or its business affairs, or from performing any of his or its obligations as set forth in this Note; or (h) the death or incompetency of Gary Levitas.

8. **Acceleration.** If any Default described in Section 7(g) hereof occurs with respect to any Constituent Obligor, the principal balance hereof, all unpaid interest accrued thereon and all other amounts owing by Maker hereunder shall immediately become due and payable without any election or action on the part of Payee. If any other Default occurs, Payee may declare the principal balance hereof, all unpaid interest accrued thereon and all other amounts owing by Maker hereunder to be due and payable, whereupon such obligations shall become immediately due and payable, without presentment, demand, protest or notice of any kind, all of which Maker hereby expressly waives.

9. **Application of Payments.** All payments on account of amounts owing hereunder shall be applied as follows: (a) first, to obligations other than the principal hereof and interest hereon charged at the Regular Rate, and specifically including but without limitation, late charges, and interest, if any, charged at the difference between the Regular Rate and the Default Rate; (b) second, to unpaid interest hereon charged at the Regular Rate; and (c) third, to the unpaid principal balance hereof.

10. **Method and Place of Payment.** Payments upon this Note shall be made in lawful money of the United States of America which shall be legal tender for public and private debts at the time of payment, and shall be made at such place as Payee may from time to time in writing appoint, provided that in the absence of such appointment all payments hereon shall be made at the offices of Payee, 6111 N. River Road, Rosemont, IL 60018. All payments hereunder shall be made in immediately available funds prior to 2:00 pm, Chicago time, on the date when due. Any payment received after such time shall be deemed received on the next day on which Payee is open for business.

11. **Usury.** Maker represents that the indebtedness evidenced by this Note is exempt from any limitations on the rate of interest that may be charged hereunder. In no event shall any interest or payment in the nature of interest be charged or collected by Payee or paid by Maker which shall exceed the maximum contract interest rate now allowed for a loan of this type by the laws of the State of Illinois (the "*Maximum Interest Rate*"). It is the intention of Payee and

Maker not to contract for a greater rate of interest than the Maximum Interest Rate. Interest, or any payment determined to be in the nature of interest, charged or collected by Payee or paid by Maker exceeding the Maximum Interest Rate shall be deemed to result from mutual mistake, and any sums so charged, collected, or paid shall be applied, at Payee's option, in reduction of the principal amount of this Note or refunded to Maker.

12. Costs of Enforcement. In the event that this Note is placed in the hands of an attorney-at-law for collection, or in the event that proceedings at law, in equity, or bankruptcy, receivership or other legal proceedings are instituted or threatened in connection herewith, or if Maker is made a party to any such proceeding, or in the event that this Note is placed in the hands of an attorney-at-law following a Default to enforce or interpret any of the rights or requirements contained herein or therein, Maker shall to pay all reasonable costs of collecting or attempting to collect this Note, or protecting, interpreting or enforcing such rights, including, without limitation, reasonable attorneys' fees, costs and expenses (whether or not suit is brought), in addition to all principal, interest and other amounts payable hereunder.

13. Notices. All notices required or permitted to be given hereunder shall be in writing and shall be deemed to have been properly given (a) if delivered by messenger, when delivered, (b) if sent by United States certified or registered mail, postage prepaid, return receipt requested, on the third business day after mailing, or (c) if delivered by reputable express courier, freight prepaid, the next business day after delivery to such carrier, so long as such notice is addressed to the applicable party as follows:

If to Maker:        Mr. Gary Levitas
                    3610 Maple Avenue
                    Northbrook, Illinois 60062

If to Payee:        MB Financial Bank, N.A.
                    6111 North River Road
                    Rosemont, Illinois 60018
                    Attention: Carolyn Gergits

Either Maker or Payee make change the address to which notices may be sent by notice to the other as provided herein.

14. Time. TIME IS OF THE ESSENCE OF THIS NOTE AND EACH OF THE PROVISIONS HEREOF.

15. Captions. The captions to the sections of this Note are for convenience only and shall not be deemed part of the text of the respective sections and shall not vary, by implication or otherwise, any of the provisions of this Note.

16. Governing Law. This Note shall be governed by the laws of the State of Illinois.

17. Confession of Judgment. In the event the outstanding principal amount hereof, together with all accrued and unpaid interest thereon and all other amounts owing hereunder, are not repaid in full on the Maturity Date, then each Constituent Obligor irrevocably authorizes any attorney of any court of record to appear for it in any such court, in term time or vacation, at any time after such date and to confess judgment against such Constituent Obligor, without process, in the amount of the then outstanding principal amount hereof, plus accrued and unpaid interest and all other amounts due and payable hereunder. Each Constituent Obligor further consents to

personal jurisdiction in such proceedings and waives and releases all errors that may intervene in any such proceedings, and further consents to immediate execution upon such judgment against the assets of such Constituent Obligor, ratifying and confirming all that said attorney may do by virtue of this paragraph.

18. <u>Waivers</u>. Maker and each Constituent Obligor hereby waives (a) demand, presentment for payment, notice of nonpayment and protest, (b) any and all notice of whatsoever kind or nature, except where notice is specifically required hereunder, and (c) any and all lack of diligence or delay in the enforcement or collection of this Note.

19. <u>Forbearance</u>. Any forbearance by Payee in exercising any right or remedy under this Note or otherwise afforded by applicable law shall not be a waiver of or preclude the exercise of that or any other right or remedy. The acceptance by Payee of any payment after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Payee's right to require prompt payment when due of all other payments or to exercise any right or remedy with respect to any failure to make prompt payment.

20. <u>Joint and Several Liability</u>. The obligations of each Constituent Obligor under this Note are joint and several. Payee may release or settle with either Constituent Obligor at any time without affecting the continuing liability of the other Constituent Obligor. Payee may proceed under this Note against either Constituent Obligor without proceeding against the other Constituent Obligor.

21. <u>Obligations Not Contingent</u>. This Note evidences a portion of the amount which Maker and Payee have agreed is currently due and payable by Maker under that certain Guaranty of Payment dated as of June 6, 2007 executed by Maker in favor of Payee (the "<u>Payment Guaranty</u>"). Maker waives any claim that its obligations hereunder are contingent in nature or subject to reduction based upon the value of any collateral now or previously held by Payee as security for the payment of the obligations that are the subject of the Payment Guaranty.

22. <u>Subsequent Holders</u>. Upon any endorsement, assignment or other transfer of this Note by Payee or by operation of law, the term "Payee" shall mean such endorsee, assignee or other transferee or successor to Payee then becoming the holder of this Note.

23. <u>Subsequent Obligors</u>. This Note shall be binding on all persons claiming under or through any Constituent Obligor; <u>provided</u>, <u>however</u>, that neither Constituent Obligor may assign its obligations hereunder without the prior written consent of Payee, which consent may be withheld in Payee's sole and absolute discretion, and any such attempted assignment shall be void. The term "Constituent Obligor" shall mean each Constituent Obligor named herein and their respective successors, permitted assigns, legal and personal representatives, executors, administrators, devisees, legatees and heirs.

[Signature Page Follows]

IN WITNESS WHEREOF, Maker has caused this Note to be executed and delivered as of the date first above written.

*/s/ Gary Levitas*

Gary Levitas, Individually

NORTHFIELD PROPERTIES, INC., an Illinois corporation

By: */s/ Gary Levitas*
Name: Gary Levitas
Title: President

A-1

## ALLONGE TO NOTE

ALLONGE to that certain Recourse Note dated June 30, 2011, in the original principal amount of $250,000.00 executed by Gary Levitas, an individual, and Northfield Properties, Inc. in favor of MB Financial Bank, N.A. (inclusive of any applicable amendments or modifications of such obligation, the "Note").

The Note is hereby endorsed as follows:

Pay to the order of SMS FINANCIAL RECOVERY SERVICES, LLC, and its successors and assigns ("Payee").

This Allonge is made without recourse and without any representation or warranty of any kind whatsoever, express or implied, or by operation of law.

Effective as of _August 29_, 2023.

ENDORSER:

FIFTH THIRD BANK, NATIONAL ASSOCIATION, successor in interest to Fifth Third Bank, an Ohio banking corporation, successor by merger to MB Financial Bank, N.A

By: _____
Sarah Horsly, Assistant Vice President

Exhibit C

## ASSIGNMENT OF LOANS, JUDGMENTS, AND LOAN DOCUMENTS

Fifth Third Bank, National Association, a federally chartered institution ("**Assignor**"), for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby assigns, transfers, sets over and conveys to SMS Financial Recovery Services, LLC, an Arizona limited liability company ("**Assignee**"), all of Assignor's right, title and interest in and to (a) the Loans described on **Exhibit A** attached hereto (collectively, the "**Loans**") and all related documents and rights Assignor has in the Loans and any related Judgments, as the same may have been assigned, amended, supplemented, restated or modified and (b) the Loan Documents and any related Judgments (as defined in the Purchase Agreement) entered between Assignor and Assignee, as the same may have been assigned, amended, supplemented, restated or modified.

**TO HAVE AND TO HOLD** the same unto Assignee and its successors and assigns forever.

It is the intention of the parties herein that by virtue of this Assignment, Assignee will become the owner of the Loans and all of Assignor's rights, title and interest incident thereto.

This Assignment is made without recourse or representation or warranty, express, implied or by operation of law, of any kind and nature whatsoever.

Dated this 29th day of August 2023.

FIFTH THIRD BANK, NATIONAL ASSOCIATION, a federally chartered institution

By: _____
Name: Sarah Horsly
Its: AVP

STATE OF ~~OHIO~~ MI )
) ss:
COUNTY OF Kent )

Before me, Jodi E. Everitt in and for said County and State, on this 29th day of August, 2023, personally appeared Sarah Hrsly to me known to be the identical person who subscribed the name of the Assignor to the foregoing instrument as its and acknowledged before me that he executed the same as his free and voluntary act and deed, and as the free and voluntary act and deed of FIFTH THIRD BANK, NATIONAL ASSOCIATION, for the uses and purposes therein set forth.

Judi E. Everitt
Notary Public

JODI E EVERITT
Notary Public - State of Michigan
County of Kent
My Commission Expires Mar 13, 2027
Acting in the County of Kent

EXHIBIT C

Exhibit A to Assignment of Loans, Judgments, and Loan Documents

Schedule of Loans and Related Judgments

| Obligor | Obligation | Account Name | Principal Balance |
|---|---|---|---|
| | | | |

| 0900114448 | 0000000018 | GARY LEVITAS | $249,999.99 |